O'DEA *v.* MICHIGAN CENTRAL RAILROAD CO.

142  265
f150 ³484

1. CARRIERS—INJURIES TO PASSENGERS—NEGLIGENCE—CONTRIBU-
TORY NEGLIGENCE—QUESTION FOR JURY.

A passenger on a railway train arrived at her destination before
the conductor had taken her ticket, and when the station was
announced she started to get off the train; but the stop was
too short, and, the train being started with a jerk before she
had time to alight, without the operatives ascertaining that
persons were not in the act of alighting, she was thrown to
the ground and injured. *Held,* that the facts did not show an
absence of negligence on the part of the carrier or contribu-
tory negligence on the part of the passenger, as a matter of
law.

2. DAMAGES—PERSONAL INJURIES — EVIDENCE — PHYSICAL CONDI-
TION—PAIN AND SUFFERING.

In an action for personal injuries, plaintiff may testify fully as
to her condition, pain, and suffering, and its duration.

3. EVIDENCE—HEARSAY—STATEMENTS TO PHYSICIAN.

Complaints of present sufferings made to a physician called by
plaintiff in a personal injury case, not for treatment, but to
make testimony, are not natural expressions, but voluntary
statements for an ulterior purpose, and are not admissible.

4. SAME—COMPLAINTS OF PAIN.

In an action for personal injuries, witnesses, who, during the
period succeeding the injury, heard plaintiff complain of
pain and suffering, may testify to the fact that she complained,
and of what she complained, as distinguished from her lan-
guage used in making such complaints.

5. DAMAGES—PERSONAL INJURIES—EVIDENCE.

In an action for injuries, evidence as to what plaintiff's weight
had been before the accident is admissible.

6. EVIDENCE—COMPETENCY—RESULTS OF EXPERIMENTS.

In an action for injuries to a passenger by the sudden starting
of the train before she had time to alight, it is not error to
exclude evidence of a subsequent test to determine the length
of time that the engineer probably took to oil his engine at the
point in question on the occasion of the accident.

7. TRIAL—INSTRUCTIONS—HARMLESS ERROR.

Error in stating that certain of defendant's requests to charge

are only given because plaintiff's attorney so requests is not prejudicial in so far as it relates to requests to which defendant is not entitled.

8. SAME—ARGUMENTATIVE INSTRUCTIONS.

In an action for injuries to a passenger while attempting to alight, an instruction that it was her duty to be observant and to heed what was going on around her, to notice whether or not the train was stationary, to observe when it started, and to protect and assist herself by the hand rails of the car, and be vigilant and see that no sudden movement would trip or throw her if she could prevent it, and if she failed to use due and ordinary precaution, etc., she could not recover, is objectionable, as argumentative.

Error to Shiawassee; Smith, J. Submitted October 5, 1905. (Docket No. 11.) Decided December 15, 1905.

Case by Margaret O'Dea against the Michigan Central Railroad Company for personal injuries. There was judgment for plaintiff, and defendant brings error. Reversed.

*O. E. Butterfield* (*John T. McCurdy, Henry Russel,* and *Ashley Pond*, of counsel), for appellant.

*Watson & Chapman*, for appellee.

HOOKER, J. The defendant has appealed from a judgment rendered against it on a charge of negligence. The plaintiff, a married woman of 55 years of age, and her brother, some years older, took defendant's evening train at Owosso for Henderson, the first station north of Owosso. According to her undisputed testimony the station (Henderson) was announced from the forward door of the coach, and as the train was slowing up the conductor entered, and the train stopped as he approached them. He did not take or ask for the tickets, but passed on, and the plaintiff then said to her brother, who, like herself, had remained seated until the conductor had passed: "Get up! He has gone by." She also testified that she supposed that he was coming for the tickets, and that she said to her brother, who was behind her: "This is the

place to get off. Come on, he ain't going to take up the tickets." She then went out, and while upon the platform, or steps the train started with a jerk, and she was thrown to the ground and injured. She also stated that they "just raised up as the conductor came to the seat, because we thought he wasn't going to stop for the tickets." The tickets were not surrendered. The brother did not get off from the train at that time, and the train was afterwards stopped a few rods north of the station for him to alight. These are substantially the main facts in the case, and there is no serious dispute about them. The defendant offered no testimony as to what occurred in the car or at the steps. There were two engines upon the train, and the engineers and firemen were sworn as to the length of the stop at Henderson, and this is the disputed fact in the case. There is no evidence as to the whereabouts of the conductor or brakeman when she sought to alight, nor is there any testimony tending to show whether either of them knew that she and her brother intended or tried to get off at Henderson. Nor is there evidence that any other passengers stopped there.

Upon this state of facts the defendant contends that there is no evidence of negligence, for the reason that these parties neither tendered their tickets nor informed the conductor of their intention to leave the train there.

We are of the opinion that the managers of a train should use some diligence to ascertain whether there are persons in the act of leaving a train before starting it, especially when the stop is so short as to make haste necessary. There is evidence in this case indicating that the stop was brief, and we cannot say, as matter of law, either that there was an absence of negligence on the part of defendant's agents, or that plaintiff was guilty of contributory negligence.

The plaintiff testified fully as to her condition, pain, and suffering, and its duration. This it was competent for her to do. In addition to her testimony, her counsel called a number of witnesses, who were allowed to testify

to her complaints, not what she said in her own language (which we do not imply would have been admissible), but the fact that she complained of this or that.  She sent for Dr. Hume, not for the purpose of giving treatment, but because he was the company's physician at Owosso. She declined medical assistance at Henderson, saying she wanted to wait and send for the railroad physician in Owosso, so they could see if she was hurt, if they wanted to settle; that she had a claim against the company (for the  injury), and wanted to get her proof together — wanted the railroad doctor, so that they would know that she was hurt.  The physician was allowed to testify:

"The patient complained of tenderness over the hip joint—that is, on pressure—and she also complained of some soreness in moving one shoulder."

This testimony was not admissible under the rule laid down in *Grand Rapids, etc., R. Co.* v. *Huntley*, 38 Mich. 544; *McKormick* v. *City of West Bay City*, 110 Mich. 270; and *Comstock* v. *Township of Georgetown*, 137 Mich. 541.  The plaintiff's own testimony shows that the witness was asked to call for the purpose of making testimony, and the fact that he did not come in response to the call, but for other reasons, is not important.  It is the design of the plaintiff to make communications for the purpose of affecting her claim that makes them inadmissible, for the reason that they are not natural expressions of present sufferings, but voluntary statements for an ulterior purpose, and therefore not within the exception to the hearsay rule.

Dr. Wilson testified:

"She complained of pain in the left hip, and in the left side of the back between the shoulder and the spinal column, on motion of the shoulder, and some headache.   I do not remember about pain, but she complained of soreness at the point of bruise."

John Carmody, plaintiff's son-in-law, testified as to the next Sunday (eight days after the accident):

" *Q.* State to the jury whether or not that she complained of slight or severe pain, at this time that you have described, in these parts of her body.

" *A.* Severe.

" *Q.* You may state to the jury whether or not she complained of any sickness or suffering in the stomach at the time.

" *A.* She did."

And as to a week later still, as follows:

" *Q.* How did she appear to you as to whether or not she was suffering pain?

" *A.* She did appear to be suffering pain.  I heard her make complaints of suffering present pain in her head, left limb, left side.

" *Q.* Did she, or did she not, make complaints of suffering any pain in her back?

" *A.* She complained of her back being lame.

" *Q.* Did she complain of suffering any headache at that time?

" *A.* She did."

And as to twenty-three days after the accident:

" *Q.* State to the jury whether or not upon this occasion Mrs. O'Dea still complained of suffering present pain.

" *A.* She did.

" *Q.* State in what parts of her body at this time she complained of suffering pain.

" *A.* She complained of her left side, limb, shoulder, and back."

This witness stated that he saw her at least once in two weeks for some months, and the following was permitted:

" *Q.* What complaints, if any, does she make when she goes up stairs as to its hurting her, causing her pain —that is, at the time she was doing it, present pain?

" *A.* She complained of her left leg and back.

" *Q.* Mr. Carmody, state to the jury whether or not, as you have observed her going up stairs at that time, she complained of suffering present pain at that time in walking.

" *A.* She did.

" *Q.* At what point of her body did she complain that it hurt her to go up stairs?

" *A.* In her left limb and side.

" *Q.* Mr. Carmody, what can you say as to whether or not at the time you have seen your mother-in-law, whether or not these complaints that you have described to the jury in the various parts of her body have continued over the whole space of time; that is, the time you have seen her?

"*A.* They have.

"*Q.* What can you say as to whether or not she appears to you to be getting better or worse of this lameness?

"*A.* She doesn't appear to be getting any better."

Plaintiff's husband and daughters, and Lena Washburn and Matilda Boyce, near neighbors, were allowed to give similar testimony. This testimony is hearsay testimony, but much, if not all, of it is admissible, unless it is subject to the same infirmity that is found in that of Dr. Hume. See *Hyatt* v. *Adams,* 16 Mich. 200; *Will* v. *Village of Mendon,* 108 Mich. 251; *Strudgeon* v. *Village of Sand Beach,* 107 Mich. 496; *Mott* v. *Railway Co.,* 120 Mich. 136; *Johnson* v. *McKee,* 27 Mich. 473; *Grand Rapids, etc., R. Co.* v. *Huntley,* 38 Mich. 543. It may reasonably be suggested that plaintiff's attempt to make testimony for herself would not be likely to end with Dr. Hume, and such suggestion was a pertinent one to make to the jury, whose duty to consider the question of simulation is thereby emphasized, but, in the absence of something specific indicating the connection of an improper purpose with such statements, it was proper to leave the testimony to the jury under appropriate instructions.

Defendant's complaint that counsel for plaintiff were permitted to show what her weight before the accident had been is without merit. We also think that the court did not err in refusing to admit testimony of a subsequent test to determine the length of time that the engineer probably took to oil his engine at Henderson on the occasion of this accident.

The court charged the jury that:

" Gentlemen of the jury: On my judgment, some requests that were handed up on the part of the defendant I

declined to give. They were marked ' *c*,' ' *d*,' and ' *e*.' The attorney for plaintiff thinks, perhaps, I might have made a mistake, although I am still of the same opinion, but at his suggestion and his request I give these three requests on the part of the defendant, which are as follows:

" (*c*) I charge you that if you find the train on which plaintiff claims she was injured stopped at Henderson a reasonable length of time for plaintiff to have alighted therefrom in safety, if she had moved with reasonable diligence in so alighting from the train, then she cannot recover in this case, as there is no evidence that any person in charge of said train saw her in the act of alighting therefrom, and defendant is not guilty of negligence in starting its train.

" (*d*) I charge you in this case that the jury may and should consider all the testimony offered by the defendant showing or tending to show how long the train remained standing at the station on the night in question. The fact, if you find it is a fact, that one of the engines attached to said train was partially disabled, and that one of the engines belonging to said train was running hot, and the engineer of said engine was on the ground at said station, and was inspecting and oiling the journals of said engine on each side thereof, and the length of time that was necessarily consumed thereby, and if the jury believe that the train stopped at said station for a period of time from three to four minutes, or a sufficient length of time for plaintiff to have alighted from it in safety by being diligent and expeditious in alighting therefrom, and she did not, then plaintiff cannot recover.

" (*e*) I charge you that it was plaintiff's duty to be observant and to heed what was going on around her, to notice whether or not the train was stationary, and to observe when it started, and, when alighting, it was her duty to protect herself and assist herself by the hand rails on the car platform and running down the steps of the car, which were prepared for that purpose, and to be vigilant and see that no sudden movement would trip or throw her if she could prevent it; and, if plaintiff failed to use due and ordinary precaution that a prudent person would under the circumstances, and was injured in consequence of such failure to protect herself from injury as a prudent person would have done, then she cannot recover in this action."

Counsel for plaintiff then said:

" You stated to the jury that it was against your honor's judgment to give them. I wish you would instruct the jury that they are not to regard that remark.

" *The Court:* No; you are to regard these instructions. I give these instructions to you to consider in connection with the facts, just the same as though I had given them in the first place."

This was error. It was harmless, however, as to the first two requests, which defendant was not entitled to have given. The third was argumentative, and we should hesitate to reverse the case for the omission to give it.

The judgment is reversed, and a new trial ordered.

MOORE, C. J., and CARPENTER, GRANT, and MONT-GOMERY, JJ., concurred.