LEEDY *v.* HOOVER.

1. Damages—Permanent Injuries—Pleading—Declaration.
    A recovery for prospective damages, reasonably liable to be sustained, is not objectionable under a declaration alleging, and charge to the jury permitting, the same, although permanent injuries are not counted on or proved.

2. TRIAL—WITNESSES — EVIDENCE — CROSS-EXAMINATION — ORDER OF PROOF.

It is discretionary with the trial judge to prevent a cross-examination of the plaintiff, in an action for trespass to his person, by questions apparently not asked in good faith concerning previous quarrels, which are denied by plaintiff, where the ruling permits the asking of such questions after a proper showing.

3. EVIDENCE—HEARSAY—COMPLAINTS OF PAIN.

While testimony of a physician, called for the purpose of obtaining evidence, is not admissible as to complaints and expressions of pain made by the injured party, it is competent unless a purpose of that kind appears.[1]

4. TRIAL—JURY TRIAL—PROVINCE OF COURT AND JURY—COERCING VERDICT.

No error is committed by a trial court in informing the jury that they must unanimously agree upon their answers to special questions.

Error to Van Buren; Des Voignes, J. Submitted February 15, 1910. (Docket No. 120.) Decided March 19, 1910.

Trespass *vi et armis* by Richard G. Leedy against Josephine S. Hoover and Clyde Hoover. A judgment for plaintiff is reviewed by defendants on writ of error. Affirmed.

*Barnard & Lewis*, for appellants.

*Thomas J. Cavanaugh*, for appellee.

HOOKER, J. The plaintiff recovered a verdict and judgment for $200, in an action of trespass for assault and battery, and defendants have appealed.

Permanent Injury. Counsel allege that the court erred in permitting evidence of permanent injuries and instructing the jury that they might award damages for permanent injuries; the declaration not alleging any permanent

---

[1] As to admissibility of expressions or statements of present pain made during sickness or subsequent to injury, see note to *Mississippi Cent. R. Co.* v. *Turnage* (Miss.), 24 L. R. A. (N. S.) 253.

injury.   We are unable to find in declaration or proof a
statement that plaintiff had suffered a permanent injury,
but the declaration does contain averments that warranted
the recovery of prospective damages for injuries not
wholly recovered from at the time of filing.   We have
examined the pages cited in support of this claim without
avail; counsel not having pointed out the language relied
upon.   We infer that counsel find it in the description of
the injuries received, evidence of which was competent in
any case.   We find no claim of damages based upon the
permanence of any injury, and no allusion to a permanent
injury is made in the charge.

The following is the charge complained of:

" And under the declaration on this case, and in view
of the foregoing instructions on damages, the plaintiff
would be entitled to recover damages for the injuries suf-
fered for their natural consequences up to the time of the
trial, together with such prospective damages of a like
character as would be reasonably probable to result from
the nature and effect of the injuries received, and which
cannot exceed the sum named in the declaration, which is
$10,000."

The declaration alleges:

" With their hands and feet, stones, sticks, and clubs
make an assault upon him, the said plaintiff, and did then
and there push, kick, strike, knock, pound, beat, bruise,
stamp upon, wound, and ill treat the said plaintiff, and
did then and there strike the said plaintiff a blow over the
head with a large stick, cutting a large gash in his head
and felled him, the plaintiff, to the ground, and did then
and there stamp upon and kick the said plaintiff in the
back, side, ribs, and elsewhere, and did then and there
jump upon and pound with their clenched fists the said
plaintiff in his face, head, shoulders, and body with such
force and violence that his head and face were pounded
into a jelly, and almost killed him, the said plaintiff,
whereby and in consequence of which said several matters
the said plaintiff became, and was, and is, sick, sore, lame,
disabled, and disordered, and hath so continued to be sick,
sore, lame, disabled, and disordered for a long space of
time, to wit, from thence hitherto, and yet continues to be

sick, sore, lame, disabled, and disordered, and in further consequence of said several matters and things the said plaintiff became, and was and is, disfigured in and about his face and head and greatly injured thereabout, and became, and was, and is, injured internally, and suffers great bodily pain in and about his head, face, and body."

We think no error was committed in this regard.

Cross-Examination of Plaintiff. Counsel asked plaintiff:

"Do you remember being in a poker game down to Bangor one time, and drawed a gun on A. Harbin, and he choking you there until you nearly died?

"*A.* No, sir; I never was. Now, that is a false statement entirely.

"*Mr. Cavanaugh:* Wait a moment. I object to that for the reason that it includes a statement that counsel knows did not exist, and further object to it in any event because it is not competent in the condition that this case is at present.

"*Mr. Barnard:* We expect to go into several fights with this man.

"*Q.* How many fights have you had in your lifetime, sir?"

The object stated was to show that defendants had heard of said alleged fights where plaintiff had drawn weapons. The court excluded the testimony until proof should be offered that defendants had heard of the transaction, disposing of the question on the order of proof. No effort was made to show such information. It was also claimed that defendants had a right to such testimony to discredit plaintiff. No error was committed. While it would not have been error to admit the testimony, the subject was within the reasonable discretion of the trial judge.

Complaints of Injury. Counsel contend that testimony of plaintiff's wife and physician that he made exclamations of pain and complained of his back was inadmissible. We have held that where a physician or other person is called for the purpose of obtaining information upon which to base his evidence, his testimony regarding complaints and expressions of pain should be excluded. In

addition to the two cases cited by counsel, viz., *Kelley* v. *Railroad Co.*, 80 Mich. 237 (45 N. W. 90, 20 Am. St. Rep. 514), and *O'Dea* v. *Railroad Co.*, 142 Mich. 268, we call attention to the cases cited in the latter case at page 270 (105 N. W. 746), which show a limitation of the rule relied on in this case. We think the testimony was admissible, subject to the scrutiny of the jury. The statement of the wife that he complained of his back does not appear to have been objected to and is not within the motion to strike, as we are unable to find that it "was made after the action was commenced," to which class of statements the motion applied. We find no error in the charge, nor was the refusal to give defendants' requests erroneous.

**Coercion of the Jury.** Complaint is made that the trial judge coerced the jury, thereby obtaining a verdict, in that he told them that, unless they agreed unanimously upon the answer to questions submitted to them, he would not receive their verdict. At the close of the charge a juror said:

"Supposing, judge, the jurors ignore that, then what ?
" *The Court:* You can't ignore it. You must answer those questions, and no verdict will be received until you answer them. That is the law."

After being absent for a time, the jury returned into court and the following proceedings were had:

" *The Court:* Mr. Foreman, I understand that you have a request that you desire to make known to the court.
" *The Foreman:* Your honor, we don't understand exactly about these special questions. Now, we can settle everything but the answers to those questions and the signatures.
" *The Court:* In what respect ?
" *The Foreman:* Well, the jurymen want to know whether they have to, for instance, take the first question —if they are divided on it whether they have got to— whether they can sign their names giving their vote on it.
" *The Court:* Well, you will have to answer those questions, gentlemen, as they appear there. As I said to you, either in the affirmative or negative; as you find the

evidence to be, either yes or no, and that is something you will have to agree upon the same as any other part of the verdict. I can say nothing further to you than this: That the law permits in cases of this character the parties to frame not to exceed four questions, I think it is, perhaps it is more, but it is limited, and those questions are so framed that they may be answered by yes or no, and it is your duty to collectively talk those questions over and agree upon them, and answer them the same as any other part or portion of your verdict; and, after having done so, you will have to sign the paper on the other side or at the bottom—all of the jurors. Now, that is all that I can say to you, gentlemen. I cannot discuss questions with you at all, because it is a question of fact, but that is one of the things that you will have to agree upon the same as anything else.

"*A Juror:* I think, honorable court, some of the jury-men, some of us, are at a loss to know—for instance, take the first question whether a part of us could sign those questions yes and the other part no. That is the understanding that I have that we have got to sign them unanimously.

"*The Court:* Yes, sir; they have got to be unanimous and sign your names to it. You may return the jury.

"*A Juror:* Then we've got a job."

We see nothing in this that should be called coercion. Every jury is informed that their verdict must be unanimous to be effective. There are other questions raised, but they require no discussion.

We find no error in this record, and the judgment is affirmed.

MOORE, McALVAY, BROOKE, and STONE, JJ., concurred.