## MARSHALL *v.* WABASH RAILROAD CO.

1. EVIDENCE—NEGLIGENCE—CARRIERS—PERSONAL INJURIES.

On the trial of a personal injury action, medical testimony based in part on movements of plaintiff, a practicing physician, under tests applied to his feet, knees, and other parts of his body, and expert opinions founded on lack of responsiveness to tests so made, should have been excluded as to all manifestations or want of manifestations within plaintiff's power to control; since any movement made by him was equivalent to an oral expression, and plaintiff is presumed to know the responses, etc., indicative of his alleged disorders.

2. SAME.

As to tests to which plaintiff could not control the responses or manifestations, the opinion of the witness showing what could not be controlled and what could be controlled in part was properly received.

3. SAME—CURING ERROR.

Defendant did not obviate or waive the effects of the error by introducing like testimony for the purpose of showing that plaintiff could simulate the effects produced by the expert; and the testimony so improperly admitted tended to prejudice defendant.

4. SAME—NONPREJUDICIAL ERROR.

Testimony having no probative value, not having a tendency to influence the verdict, was not prejudicial to the defense: nor was evidence that plaintiff could not perform his professional labor while he was confined to his bed: but observations of witnesses as to the decreased number of patients that visited plaintiff's office after his injury were irrelevant.

5. DAMAGES—EXTENT OF INJURIES.

To entitle plaintiff to recover damages for apprehended consequences of an injury, there must be such a degree of probability of such consequences as to amount to a reasonable certainty that they will result from it.

Error to Lenawee; O'Mealey, J.   Submitted April 8, 1912.   (Docket No. 71.)   Decided July 11, 1912.

Case by Lewis J. Marshall against the Wabash Railroad Company for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed.

*Smith, Baldwin & Alexander*, for appellant.

*F. M. Sala* and *J. N. Sampson*, for appellee.

OSTRANDER, J.   A judgment for plaintiff upon a former trial of the cause was reversed. *Marshall v. Railroad Co.*, 163 Mich. 88 (127 N. W. 788). It was reversed because of conduct of one of the attorneys for plaintiff and conduct of the court upon the trial. Attention was called to the treatment of a certain witness by the attorney for plaintiff and his argument to the jury as objectionable. And, as to other errors assigned, it was said no reversible error was made out. The cause has been again tried, and the record presented in this court contains more than 500 pages, including 165 assignments of error. In the order in which these alleged errors are presented in the brief for appellant, the first group involves the competency of certain testimony given by medical witnesses called for the plaintiff.

The first witness testified that he was, shortly before the trial, called to examine the plaintiff for the purpose of giving testimony, and not to treat or advise the plaintiff. He was instructed by the court to omit statements made by the plaintiff and actions of the plaintiff, to state the conditions he found, and his opinion only. He stated the result of his examination, his narrative being frequently interrupted by objections, arguments, motions to strike out, and exceptions. The witness had previously testified that the plaintiff was stripped for the examination, that his general outline was noticed, and measurements of his limbs and body on both sides. His gait was tested. He was laid on a couch and his heart, lungs, his eyes, tongue, and lower extremities examined. He was tested for the knee jerk, a sharp instrument was run over the bottoms of his feet, the legs were tested for sensibility to touch, to

pain. An electric current was used to test responsiveness of muscles, he was made to stoop for and arise with objects on the floor, was made to stand with eyes closed, heel to heel. The tests usually employed in making such an examination were used. The witness, who conducted the examination with or in presence of two other medical men, who also gave testimony, expressed certain opinions concerning the condition of the plaintiff. He also stated his opinion concerning the ability of the plaintiff to simulate, in his actions, responsiveness, or the lack of it, to some of the tests applied. The principal objection to admitting this opinion evidence is that it is based, in part, on manifestations, movements, or the lack of movement, which the plaintiff could control. In various decisions of this court, some of which are here cited, attempts have been made to state and apply the rule for receiving and for rejecting testimony of a similar character. *Grand Rapids, etc., R. Co.* v. *Huntley*, 38 Mich. 537 (31 Am. Rep. 321); *Laughlin* v. *Railway Co.*, 80 Mich. 154 (44 N. W. 1049); *McKormick* v. *City of West Bay City*, 110 Mich. 265 (68 N. W. 148); *Jones* v. *Village of Portland*, 88 Mich. 598 (50 N. W. 731, 16 L. R. A. 437); *Comstock* v. *Township of Georgetown*, 137 Mich. 541 (100 N. W. 788); *O'Dea* v. *Railroad Co.*, 142 Mich. 265 (105 N. W. 746).

In the instant case it may be assumed that the plaintiff knew what responses and manifestations would be indicative of disorder and would best fit with his allegations of injury. Any movement made by him during his examination was an act, a manifestation, equivalent to an oral expression. As to many of the tests, it was the opinion of the witness that the plaintiff could not control the manifestations, as to others, that he might control them in part; and this opinion it was proper to receive, because the jury is presumed to have had no extra knowledge upon the subject. In *McCormick* v. *Railway Co.*, 141 Mich. 17, 21 (104 N. W. 390), the testimony condemned was the opinion of a medical witness that the plaintiff

was not simulating, that being finally, as of course it must be, a question for the jury. The question was not whether the nature of the test or examination precluded the idea of voluntary manifestations.

In cautioning the witness, the court voiced the proper rule to be observed in such cases, a rule so often stated and so long adhered to in this State that it ought not to be misapprehended. See *Comstock* v. *Township of Georgetown, supra.* The witness did not observe the admonition of the court. In so far as he obeyed it, the testimony was competent; in so far as it was disregarded, it was not competent. The point is of large significance in this case, because it is one of the principal contentions of defendant that plaintiff suffered no such injury as he alleges and as he himself details. The verdict was a very substantial one. There is much testimony tending to prove that plaintiff's injuries were never serious, and that their effects are inconsiderable.

To the argument that the defendant introduced like testimony, it is replied that objection was not made to it, and that the testimony for defendant appears to have been introduced for the broader purpose of proving that such manifestations as the plaintiff exhibited could be and were simulated. The jury was not instructed upon the subject.

It is to be regretted that the cause must go down again for a new trial, but, upon examination of the record, we cannot say the objectionable testimony was not prejudicial.

We notice some of the objections which may be repeated upon another trial. The testimony of a number of witnesses was offered for the purpose of corroborating the estimates made by the plaintiff of the losses sustained by him in his professional business. In favor of much of it, it may be said that it had no tendency to prove the losses claimed, and probably was not regarded as of value by the jury. It needed no testimony to prove that, when plaintiff was not at his office, he could not be doing busi-

ness in his office, nor that when he was confined to his bed, as he describes, he could not be visiting patients. No testimony and no argument is required to prove that, if the services of a professional man are not available, he will not have clients, and consequently will not have an income from clients. No one but plaintiff pretends to know what he earned before he was injured and what he has since earned. In so far as his idleness or inability to carry on his affairs was the result of injuries, for which defendant is responsible, he should be compensated. But the observation of witnesses, and comparisons made by them, of the number of people visiting the plaintiff's office before and after the alleged injury is, as a basis for estimating his damages, of doubtful value and relevancy.

The hypothetical question put to medical witnesses by counsel for plaintiff is not open to the criticisms which are made, which seem to be aimed at nonessentials. There is, for example, abundant testimony tending to prove that plaintiff's head was cut and bled somewhat profusely. Whether the wound was produced by falling against the side of the car, a transom, or a parcel rack is not very material. There was testimony in support of the hypothesis that plaintiff had become flat-footed as a result of the injury.

Nor was it error to admit testimony tending to prove a condition of plaintiff, attributable and attributed to the injury, affecting his health and involving probable future ill consequences. The point was considered in *Bririnstool* v. *Railways Co.*, 157 Mich. 172 (121 N. W. 728), and the rule was stated to be—a rule to which witnesses and the jury are carefully confined—

"That, to entitle a plaintiff to recover damages presently for apprehended future consequences of an injury, there must be such a degree of probability of such consequences as to amount to reasonable certainty that they will result from the original injury."

We do not consider errors assigned upon the charge as given. We remark, in passing them, that most of de-

fendant's requests contain statements and recitals which make them objectionable.   Other errors assigned are not likely to arise upon a new trial.

The judgment is reversed and a new trial granted. Costs of this appeal will be taxed as though the printed record contained no more than 250 pages.

MOORE, C. J., and STEERE, McALVAY, BROOKE, and STONE, JJ., concurred.   BLAIR and BIRD, JJ., did not sit.