GROGITZKI *v.* DETROIT AMBULANCE CO.

1. AMENDMENTS—PLEADING—DECLARATION—PERSONAL INJURIES.

In the trial of an action for personal injuries, plaintiff's attorney, in order to meet the objection raised by defendant that evidence of injuries sustained to plaintiff's ear was not covered by the declaration, asked for and procured leave to amend the pleading. Although defendant claimed to be surprised and requested a continuance the court permitted the amendment. The declaration as originally framed charged that plaintiff was greatly wounded and bruised in and about the head, face, body and limbs and became sick, sore, lame and disordered. *Held*, that as originally framed the declaration warranted the admission of the proofs that plaintiff's hearing was affected by the injury, also that no reversible error was committed by permitting the amendment.

2. EVIDENCE—HEARSAY—COMPLAINTS MADE BY INJURED PERSON—EXPERT TESTIMONY—PAIN AND SUFFERING.

It was improper to admit in evidence the statement of plaintiff's physician as to complaints of the patient and exclamations of pain made during a treatment which took place some weeks after the alleged injury, though the physician did not make an examination for the purpose of obtaining evidence but in the ordinary course of his duties as a physician.

OSTRANDER, STEERE, and STONE, JJ., dissenting.

3. AUTOMOBILES—NEGLIGENCE—HIGHWAYS AND STREETS—PRESUMPTIONS—EVIDENCE.

The trial court, in an action for injuries sustained in a collision between the vehicle in which plaintiff was riding and an automobile ambulance owned by the defendant which defendant's servant claimed was trying to pass plaintiff's conveyance and was compelled to turn so as to avoid striking another passing vehicle, throwing out the plaintiff and injuring him, committed reversible error in charging the jury that any presumption of negligence of the defendant arose from the occurrence of the accident.

4. SAME—TRIAL—CHARGE.

> It was also erroneous to instruct the jury that such presumption of negligence might be rebutted by testimony which satisfied the jury that the agent of defendant exercised ordinary care and prudence, as such instruction cast too onerous a burden upon the defendant to establish freedom from negligence.

5. SAME.

> Defendant was also entitled to have the jury instructed, as requested, that it did not follow, because an accident was shown, that plaintiff could recover, that an injury caused by some actionable negligence must have occurred and that the jury must find plaintiff was free from contributory negligence; that the injury must be found to have been caused by defendant's negligence and not by the unexpected turning or stopping of the vehicle passing in the highway; that if the plaintiff was sleeping or nodding he was guilty of contributory negligence.

Error to Wayne; Codd, J. Submitted April 19, 1915. (Docket No. 1.) Decided June 7, 1915.

Case by Frederick Grogitzki against the Detroit Ambulance Company for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed.

*James H. Pound,* for appellant.

*W. C. Gottman,* for appellee.

STONE, J. This is an action on the case to recover damages for personal injuries claimed to have been sustained by the plaintiff on October 13, 1911, caused by one of the servants of the defendant negligently operating defendant's automobile ambulance, and driving it into the vehicle of plaintiff while on their way to the city of Detroit, in the vicinity of Dearborn. The declaration alleges that the defendant's servant drove said automobile ambulance at an unreasonable and improper rate of speed and omitted to give due and timely warning of the approach of said automo-

bile ambulance while both vehicles were being driven in an easterly direction toward the city of Detroit, between the hours of 1 and 2. o'clock in the afternoon of said day, while the plaintiff was riding in a vehicle commonly called a one-horse market wagon, drawn by one horse; that while the plaintiff had turned his horse and vehicle to the right to allow an approaching wagon drawn by a team of horses, and driven by one Wendt, going in a westerly direction, to pass, with due care and caution on his part, and without any knowledge of the approach from behind of said automobile ambulance, the servant of said defendant so negligently, carelessly, and recklessly drove said ambulance from behind against the market wagon of the plaintiff, with great force and violence, that by reason thereof plaintiff was violently thrown off from said market wagon, a distance of 15 feet or thereabouts, into a ditch or excavation alongside the public highway—

"whereby the said plaintiff, without any fault or negligence on his part, but wholly by and through the negligent fault of the said defendant, its agents, servants, and employees, was greatly wounded and bruised in and about the head, face, body, and limbs, and injuring his spine to such an extent that he is compelled to use crutches in order to walk, and that he will be compelled to use crutches for the remainder of his natural life, and because and by reason of such injury he became sick, sore, lame, and disordered, and has so remained and continued, and still does so remain and continue, up until the present time, during which time the said plaintiff has suffered and does suffer great bodily pain and mental distress, and was obliged to undergo surgical and medical treatment, and is still under the care of a physician, on account of said injury, whereby the said plaintiff was and is thereby hindered and prevented from performing and transacting his necessary affairs and business, to wit, the business and vocation of farming, whereby he has lost great gains and profits which otherwise would

have accrued to and been earned by him," etc., to the damage of the plaintiff $25,000.

Upon the trial the evidence tended to show that, while riding upon his wagon toward the city of Detroit from the west on said day, plaintiff's wagon was severely struck by defendant's automobile in the manner described in the declaration. It appeared upon the trial that the defendant, whose business is that of operating one or more ambulances in the city of Detroit, had been engaged in taking a patient to the hospital in Dearborn, and was returning to the city of Detroit. The evidence tended to show that the accident was occasioned by the ambulance driving up in the rear of plaintiff's wagon, and that some confusion was occasioned by one Wendt, the driver of another team going in an opposite direction, driving up alongside the plaintiff's wagon, leaving but little or no space for the ambulance to pass the plaintiff's wagon. It was the claim of the defendant, which claim was supported by testimony, that the driver of the other team, which was going west, when opposite the plaintiff's wagon, stopped his team and threw the defendant's servant thereby into confusion, and that in order to save a more serious injury he collided with the left wheel of the plaintiff's wagon, thereby jarring and throwing him from his load into a ditch at the right-hand side of the road, whereby he was more or less seriously injured.

There was a conflict in the evidence as to whether the defendant's servant sounded its bell and gong, and it was the further claim of the defendant that, had not the driver of the other wagon attempted to pass plaintiff at the same time that defendant's servant was seeking to pass plaintiff's wagon, there would have been no collision; that defendant's servant applied his brake with the utmost force, so that it was broken; and by using every effort to stop, and to save

the horses upon the team going west from injury, defendant's driver scraped plaintiff's left hind wheel, doing no serious injury; and there was further testimony on the part of the defendant that plaintiff was asleep and not attending to his business at the time of the collision.

A recovery was had by the plaintiff in the sum of $600 damages, and after the denial of a motion for a new trial based upon the grounds that the verdict was excessive, against the great weight of evidence, and of newly discovered evidence, the defendant has brought the case here upon writ of error. There are many errors assigned, some of which we do not deem it necessary to mention.

1. Error is assigned upon the ruling of the court in refusing to entertain a challenge for cause against a juror named Popke. An examination of the record has led us to the conclusion that the court did not err in its ruling; that the examination of the juror did not disclose a state of facts that disqualified him from sitting. The juror was afterwards peremptorily challenged, but the defendant, having exercised its statutory number of peremptory challenges, claimed error as above stated.

2. During the direct examination of the plaintiff the following occurred:

"*Q.* How was your hearing before the accident?
"*A.* Good.
"*Defendant's Counsel:* I object.
"*Q.* How is it now? (Same objection and exception.)
"*A.* I can't hear in this ear. * * *
"*Defendant's Counsel:* I object to it; it is not covered by the declaration."

Thereupon plaintiff's counsel asked leave to amend the declaration, setting forth the affected hearing. After some colloquy between court and counsel, the court permitted the amendment to be made, against

the objection and exception of defendant's counsel that he was surprised; and he asked for a continuance. This was refused, and exception duly taken, and error assigned thereon. It was contended by plaintiff's counsel that the original declaration was sufficiently broad to permit testimony tending to show that plaintiff's hearing had been affected by the injury. The rulings of this court have been very liberal upon this subject. Were this a new question, we should be in doubt whether the declaration was sufficient to admit evidence of this character without an amendment, and should doubt the propriety of compelling defendant to proceed in the trial of the case without time to prepare for the new claim; but beginning with the case of *Johnson* v. *McKee*, 27 Mich. 471, followed by the cases of *Montgomery* v. *Railway Co.*, 103 Mich. 46 (61 N. W. 543, 29 L. R. A. 287); *Beath* v. *Rapid Railway Co.*, 119 Mich. 512-518 (78 N. W. 537); *Fye* v. *Chapin*, 121 Mich. 675-680 (80 N. W. 797); *Leslie* v. *Traction Co.*, 134 Mich. 518-520 (96 N. W. 580); *Comstock* v. *Township of Georgetown*, 137 Mich. 541-558 (100 N. W. 788); *Renders* v. *Railroad Co.*, 144 Mich. 387-391 (108 N. W. 368); *Groat* v. *Railway*, 153 Mich. 165-168 (116 N. W. 1081); *Mueller* v. *Railway*, 162 Mich. 313-315 (127 N. W. 325); *Ralph* v. *Gies-Gear Co.*, 164 Mich. 44-46 (129 N. W. 8); *Markoff* v. *Railway*, 169 Mich. 37-42 (134 N. W. 1101); *Bosek* v. *Railway*, 175 Mich. 8-13 (140 N. W. 978)—we are of opinion that the declaration, as originally framed, was sufficiently broad to admit this evidence, and there was no reversible error in the ruling of the court permitting the amendment.

3. Error is alleged upon the ruling of the court in admitting the testimony of Dr. Henry L. Berdino. This witness testified that he had been the family physician of the plaintiff for five or six years; that he had treated him before the accident for rheumatism,

and testified that before the injury he was a robust man. His evidence then proceeded as follows:

"I was first called to treat him in relation to this injury on the 12th day of November after the accident. I treated him for this accident. I made an examination of him.

"*Q.* What examination did you make?

"*A.* Well, he complained of a great deal of pain—

"*Defendant's Counsel:* I object to that, and I ask that it be stricken out. (Objection overruled and exception.)

"*Q.* Go on and explain it.

"*A.* He complained of pain in his back, and I told him to remove his clothing and get on the table, and I found tenderness along the muscles of the back, from his neck down to the end of the spine. I examined him by palpation; it is with your hand.

"*Q.* What result did you find?

"*A.* I found certain spots along the muscles that if I touched him he would flinch, and say it would cause him pain. (Further objection and exception by defendant's counsel.)

"*Q.* Do you remember how long after the accident you were called in there to treat him?

"*A.* I don't know exactly, I judge about one month.

"*Q.* How was he physically at that time in relation to walking?

"*A.* He was using crutches.

"*Q.* About how long did he use crutches?

"*A.* About a month, or a month and a half.

"*Q.* Did he call upon you, or did you call upon him?

"*A.* He came to my office. * * *

"*Q.* Doctor, from your examination that you have made of him, do you think these injuries of his are permanent in character?

"*A.* No, sir; it may last for months, they may last for months yet.

"*Q.* What is his condition at the present time?

"*A.* He complains of pain in the back and he is nervous.

"*Q.* What is that the result of, Doctor?

"*A.* It is hard to tell, he never complained of it before the injury to me."

Upon cross-examination the following occurred:

"*Q.* Can you swear he has any pain of your own knowledge—that he has got any pain?

"*A.* I should say he has; yes, sir.

"*Q.* How do you know, can you see it?

"*A.* No, sir.

"*Q.* No evidence of it at all?

"*A.* Yes; his actions.

"*Q.* By his actions you mean his flinching?

"*The Court:* I want you to understand the ruling of the court as to your objections, that exclamations of pain, or statements of pain, that are given by the plaintiff to a doctor at the time of the examination in getting his history of the case at the first examination, I will admit; but any statement made later, as regards the statement that he has suffered pain, or his sufferings at the present time, I will exclude that.

"*Defendant's Counsel:* I would not object to exclamations of pain about the time of the injury, but I do not understand that he saw this gentleman at all until months after the injury—just about a month after. I will concede that what was said in a few days after would be all right, but I don't think it is proper a month after.

"*The Court:* I don't understand when this doctor came there. I think, if your contention is correct that it was a month afterwards, it would be hearsay testimony. He can testify to exclamations of pain, but the testimony was that he said he was suffering pain.

"*Plaintiff's Attorney:* He said that he flinched when he examined him, and palpated.

"*The Court:* That may stand, but anything that is spoken or said by the plaintiff to the witness as to his condition I will exclude.

"*Plaintiff's Attorney:* That is all right, but I ask that his exclamation of pain at the time of the examination—

"*The Court:* I think that the fact that he said he was suffering pain would not be material. All that testimony will be excluded as to what this plaintiff said to the doctor."

It will be noted that this witness was the family physician of the plaintiff, and that what took place

was while he was treating the plaintiff for the alleged injury. There are a number of rulings of this court upon this subject, notably the following cases: *Grand Rapids, etc., Railroad Co.* v. *Huntley*, 38 Mich. 537 (31 Am. Rep. 321); *Comstock* v. *Township of Georgetown, supra; O'Dea* v. *Railroad Co.*, 142 Mich. 265 (105 N. W. 746); *Marshall* v. *Railroad Co.*, 171 Mich. 180 (137 N. W. 89); *Norris* v. *Railway*, 185 Mich. 264 (151 N. W. 747). This treatment and examination began about one month after the injury, and it continued to a greater or lesser extent down to the time of the trial. This suit was begun on December 27, 1911, and the trial occurred on June 13, 1913.

In the *Huntley Case* this court held that exclamations of pain were properly excluded from evidence in an action for personal injury, where they were made at a medical examination conducted after the controversy arose, for the purpose of obtaining testimony and not for treatment. In *Comstock* v. *Township of Georgetown, supra,* it was held that expressions of pain, vocal or otherwise, made to physicians called by plaintiff, not to give medical aid, but to make up medical testimony, were inadmissible. In *O'Dea* v. *Railroad Co., supra,* it was held that complaints of present sufferings made to a physician called by plaintiff in a personal injury case, not for treatment, but to make testimony, are not natural expressions, but voluntary statements for an ulterior purpose, and are not admissible. In *Marshall* v. *Railroad Co., supra,* many other cases are cited, and the rule is there reiterated.

The instant case may be readily distinguished from those above cited. Here the witness was the family physician, called to examine and treat the plaintiff for his alleged injury; and in our opinion the doctrine of the above-cited cases does not apply, and we do not think the court erred in its final ruling upon the sub-

ject, which seems to have permitted a part only of the evidence to stand. The ruling of the court was not as clear as might be desired, but we take it that it was the intention to exclude all testimony as to what the plaintiff said to the doctor.

Among defendant's requests to charge were the following:

"XIV. It does not follow that because there was an accident and some injury there can be a recovery by the plaintiff in this case. It must have been an injury caused by some actionable negligence of the defendant's servant, from which plaintiff was free, and while he himself was guilty of no negligence. And you must also find that the injury was not caused by the unlooked for and unexpected action of Mr. Wendt." -

"XVII. If he was sleeping or nodding, he was guilty of contributory negligence, and cannot recover."

The court, in its charge to the jury, used the following language:

"In order for a person to recover any damage for an injury suffered by an accident, he must present proof to you to satisfy you, by a preponderance of evidence, that the accident in question was caused by the negligence of the defendant or the defendant's agent; also that he himself was free from any negligence that contributed to the injury."

"Now, in this case, gentlemen of the jury, under the law, the occurrence of this collision, as has been testified to, in the defendant's agent coming from behind and striking the plaintiff, would raise a presumption of negligence. That presumption of negligence, however, gentlemen of the jury, may be rebutted by testimony, and if that testimony satisfies you that the defendant's agent exercised the ordinary care and prudence that a person is required to exercise in operating a vehicle upon a public highway, and that he performed the other duties that he is required to perform, that presumption of negligence may be rebutted, and it would then become a question of fact for you to determine whether or not that ordinary

care was exercised by the defendant's agent, and whether or not he performed the duties required under the law to perform in operating his vehicle on a highway."

"Now, gentlemen of the jury, Michigan avenue, where this accident occurred, is a public highway, upon which all citizens have a common right to travel with any kind or mode of conveyance allowed by law, so long as they use the same in the ordinary conventional manner, they are not guilty of actionable negligence. The defendant ambulance company had as much right to be on Michigan avenue at the time that the injury happened as had the plaintiff. Their servant had the right to pass plaintiff, if, in the exercise of the judgment of an ordinary man skilled in the operation of an automobile, it could be done with safety, and if in a careful attempt to do so defendant's agent was prevented by the unexpected stopping of Mr. Wendt, a cotraveler along the same roadway at the time, and the breaking of the brake of the automobile in an endeavor to avoid an injury, that would not be in and of itself negligence. It was the duty of the defendant and the defendant's agent to operate his automobile in a careful and prudent manner. It was his duty, in approaching any vehicle ahead of him and in attempting to pass by, to give a warning of his intention so to do—to give warning of the fact that he was approaching. It was a duty imposed upon him by our statute, and if you find from the testimony that he failed to perform his duty—and, as you know, there is a dispute in that respect—and you find that he failed to give warning as required by law, and the failure to give that warning as required by law was the cause of the injury in question, then that constitutes a negligence for which the defendant would be liable."

Error is assigned upon the refusal of the court to give each of the aforementioned requests to charge on behalf of defendant, and upon that part of the charge in which the jury were instructed that the occurrence of the collision raised the presumption of negligence of defendant, but that this presumption of negligence might be rebutted by testimony, and if that testimony satisfied the jury that the defendant's agent exercised

the ordinary care and prudence that a person is re-
quired to exercise in operating a vehicle upon a public
highway, and that he performed the other duties that
he is required to perform, that presumption of negli-
gence might be rebutted, and it would then become a
question of fact for the jury to determine whether or
not that ordinary care was exercised by defendant's
agent, and whether or not he performed the duties
required under the law to be performed in operating
his vehicle on a highway. Counsel have not aided us
in their briefs upon this subject. We have looked in
vain for any authority that would justify that portion
of the charge of the court just referred to relating to
a presumption of negligence of defendant. By the
undisputed evidence in the case the collision occurred,
and was in fact occasioned largely, by the conduct of
the man Wendt in driving as he did, and stopping his
team, as claimed by the defendant, unexpectedly, as
well as by the breaking of the brake in a sudden ap-
plication to prevent the injury, and we think that the
ordinary rule of negligence should have been applied,
that question being one of fact for the jury, and that
there was no presumption that the defendant was
guilty of any carelessness or negligence; and we know
of no rule of law under the circumstances of this case
which threw the burden upon the defendant to *satisfy*
the jury that the defendant's agent exercised the
ordinary care and prudence that a person is required
to exercise in operating a vehicle upon a public high-
way. The burden of proof upon the subject of negli-
gence of defendant was on plaintiff. The charge was,
in our opinion, contradictory, and the vice which
exists in it is that it casts too heavy a burden upon
the defendant, which we think was not removed by
any portion of the charge. For this reason we are of
opinion that the charge was prejudicial to the rights
of the defendant, and that prejudicial error here in-

tervened. We think that the fourteenth and seventeenth requests to charge should have been given. For these errors we, deem it our duty to reverse the judgment of the circuit court.

There were numerous other objections and exceptions, which were covered by the assignments of error; but, as the questions involved are not likely to arise upon a new trial, they do not require any further attention.

For the errors pointed out, the judgment of the court below is reversed, and a new trial granted.

OSTRANDER and STEERE, JJ., concurred with STONE, J.

MCALVAY, J. I concur in the result, but believe that evidence as to exclamations was improperly admitted under the authorities cited.

BROOKE, C. J., and KUHN, BIRD, and MOORE, JJ., concurred with MCALVAY, J.