MARSHALL v. WABASH RAILROAD CO.

TRIAL—CONDUCT OF COURT—PERSONAL INJURIES.
    In an action by a passenger against a carrier for personal injuries, in which the jury awarded a large verdict and the principal issue related to the extent of plaintiff's injuries, it was error for the trial court to indicate, by remarks, in the presence of the jury, that he had observed that plaintiff was in such pain while on the stand that he had been on the point of intervening two or three times to have something done for plaintiff's comfort.

Error to Lenawee; O'Mealey, J.   Submitted June 29, 1910.   (Docket No. 83.)   Decided September 28, 1910.

Case by Lewis J. Marshall against the Wabash Railroad Company for personal injuries.   A judgment for plaintiff is reviewed by defendant on writ of error.   Reversed.

*Smith, Baldwin & Alexander,* for appellant.

*Frank M. Sala* and *Bird & Sampson,* for appellee.

MOORE, J.   In February, 1908, plaintiff was a passenger upon one of the trains of defendant, which train was derailed.   It is his claim that he then received severe injuries.   He sued the company and obtained a judgment for $9,987.50.   The case is brought here by writ of error.

Counsel for defendant discuss the assignments of error under 11 heads.   The trial of the case was hotly contested.   The printed record contains upwards of 350 pages.   We shall not go into it in detail, though we have carefully considered it.   The case in the main was well tried, and we find that many of the assignments of error are not well taken.   We shall refer only to the following groups of assignments of error:

(2) Treatment of defendant's witness Mr. Bice.
(3) Improper conduct of plaintiff's counsel during trial.
(4) Improper remarks of court during trial.
(10) Improper argument.

As to groups 2 and 10:   The cross-examination of Mr. Bice, and the argument of counsel came dangerously near, if it did not go outside of, the boundary lines of a proper cross-examination, and a proper argument.   As the case must be reversed for a reason stated later, we think it unnecessary to decide whether reversible error was committed in this respect.

As to groups 3 and 4:   The plaintiff was on the stand as a witness.   The record discloses the following:

"One of the attorneys for the plaintiff (bringing a coat.

folded to plaintiff) said, Will it be helpful to you to put this coat behind your back?

"*Mr. Smith:* I object to this statement.

"*Attorney for Plaintiff:* He is having pain.

"*Mr. Smith:* There is no evidence of it.

"*The Court:* I think if there can be anything done here that will benefit the witness that it may be done.

"*Mr. Smith:* He hasn't manifested any such thing, I submit, or asked for it, or claimed to have been in any pain whatever, and I take exception to this.

"*The Court:* Do you contend that external indications have not been that he is in pain, in some distress?

"*Mr. Smith:* I don't like to state any claim about it. I doubt it myself.

"*The Court to the Attorney:* You may pass him the coat that is offered if he desires it.

"*Mr. Smith:* Take an exception. (To the ruling and remarks of the court, counsel for defendant excepted.)"

This witness was called at the opening of court in the morning. Examination continued:

"*Q.* Your attorney has just placed a coat behind you?

"*A.* Evidently.

"*Q.* Don't you know?

"*A.* Yes, sir.

"*Q.* You sat all day long in a hard chair right at the end of this table yesterday, didn't you?

"*A.* I certainly did.

"*Q.* Do you say that you squirmed around and made any indication that you were in pain, sitting in that chair all day long yesterday?

"*A.* I did. I certainly was in pain, and it was just as much in evidence as it is now.

"*Q.* Why didn't you ask for a cushion yesterday?

"*A.* Well, I didn't think that you had any cushions.

"*Attorney for Plaintiff:* I object to that as assuming that he asked for a cushion today, which he didn't.

"*The Court:* I think the objection is good. The court was on the point two or three times of suggesting to the doctor, before offer of this folded coat to place behind his back, if he needed a rest, or whether he desired the cross-examination to proceed.

"*Mr. Smith:* I take an exception to this statement. I submit it is not proper for the court to state the impression, and I ask the court now to say to the jury that it is not for their consideration.

"*The Court:* Gentlemen, I suppose we may judge people somewhat by their appearance. Of course, it would be for the jury to say whether these expressions, these movements while in the witness chair, were real, or whether they were simulated, and if they believe that they were simulated it should be taken against the plaintiff instead of in his favor, because this is no place to do anything or to have any acting that is attempted by way of aiding the case of the plaintiff here, and the matter would be for the jury to determine whether what has been observed by the jury, as well as the court and counsel, were real, or whether they were simulated.

"*Mr. Smith:* I ask the court to say that simulations during the trial of the case, when the case is pending, long after the accident, and expressions of this kind, are not competent.

"*The Court:* Expressions of what kind, Mr. Smith?

"*Mr. Smith:* Expressions indicated here by the court's remarks.

"*The Court:* Well, I suppose, Mr. Smith, that if a man was actually suffering pain that he wouldn't be under obligation, he could hardly be charged with simulation if some outward expressions of that pain were manifested; but, as I say, the jury would be instructed now and at the conclusion of the case that, if they believe that there is simulation here and there is no real pain, that then what has been witnessed and manifested here should be taken against the plaintiff in undertaking to aid his case and aid a recovery here by acting and by appearance conveyed to the court and the jury and counsel were unreal and simulated, if they so believe.

"*Mr. Smith:* I didn't quite care to convey that idea of it, but what I understand the rule to be is that voluntary exclamations right after injury and before a lawsuit is started are competent if detailed or shown, but, after a lawsuit has been started and there is a controversy, I don't understand that such things are competent.

"*The Court:* I think not.

"*Mr. Smith:* That is why I object.

"*The Court:* Except if one is in pain at a particular time, during the trial, and there are manifestations of that, external manifestations, that if assistance is offered to undertake to relieve the pain or make it less, that it is not anything upon which an objection could be founded, so far as the trial is concerned.

"*Mr. Smith:* I take an exception to the ruling."

One of the very important subjects of contest was the extent of the injury sustained by plaintiff, and whether he was still suffering pain traceable to the injury, and the extent of it. What we have quoted from the record makes it clear that the jury were given to understand the judge had observed the witness was in such pain that the judge was on the point of intervening two or three times to have something done for the comfort of the witness, who was also plaintiff. An impression of this sort obtained by the jury from the judge would be hard to remove, and we cannot say what then occurred, as shown by the record, did not influence the jury, when it gave the plaintiff the very substantial verdict it did.

While we have examined the other assignments of error, we deem it unnecessary to discuss them further than to say they do not establish reversible error.

Judgment is reversed, and new trial ordered.

OSTRANDER, BROOKE, BLAIR, and STONE, JJ., concurred.