## MARSHALL v. WABASH RAILROAD CO.

1. EVIDENCE — CARRIERS — DERAILMENT — OPERATION OF TRAINS— OPINIONS.

> In a personal injury action brought by a passenger for damages suffered in a derailment of one of defendant's trains, plaintiff, who claimed injuries to his spine and to his back resulting in paralysis and other permanent injuries, being a practicing physician, was entitled to testify, although he admitted he became unconscious after his injury, that the cause of the loss of the use of his limbs was due to a concussion of the spine: the question did not depend upon what or how he struck, but upon the conditions which resulted from the injury to his person, the testimony tending to show that he had sufficient qualifications as a medical expert.

2. SAME—WITNESSES—CONCLUSION.

> Testimony of a witness, who had been employed by defendant upon a section or portion of the track on which the injury occurred, that, although he was not there at the time of the wreck, he went over the track and knew by the looks of the ties where the derailment occurred, and that the entire space there was in bad condition, the ties being rotted and half of them defective, presented an issue for the jury as to the negligence of defendant, although upon cross-examination he was unable to state exactly the location of the wreck from the appearance of the ties and refused to state positively its exact location: a motion made to strike out the testimony of this witness was not improperly denied, since it clearly related to the place of the accident and to the time when the wreck occurred, and its weight was for the jury.

3. SAME—EXPRESSIONS OF PAIN—HEARSAY.

> Testimony of lay witnesses tending to show the manifestations, appearance and acts of the plaintiff after the accident, not occurring with anticipation that the witnesses would be called in the case, was properly received and was competent.

4. CARRIERS — NEGLIGENCE — CONDITION OF TRACK—DIRECTED VERDICT—PROOF OF LOOSE RAILS OR DECAYED TIES.

> The trial court did not err, in an action for injuries sus-

184 Mich.—38.

tained by a passenger in a derailment, by refusing to direct a verdict for defendant upon evidence that tended to show a decayed condition of the ties at or about the place of the derailment and consequent loose condition of the rails and upon evidence tending to show that the train in which plaintiff was riding was being operated at an unsafe rate of speed.

5. SAME—DEGREE OF CARE—QUESTION OF LAW AND FACT.

The degree of care that must be observed by the carrier in the operations of its trains is a question of law for the court: the general rule is that carriers of passengers are required to exercise the highest degree of skill and vigilance.

6. SAME—RAILROADS.

Considering the trial court's instructions to the jury as a whole and as modified by other portions of the charge, it was not error for the court to state to the jury that it was the duty of defendant to exercise that high degree of care and caution which the most prudent, careful and cautious man, engaged in similar business, exercises under the same circumstances, when it appeared that the court further advised the jury that such care must be consistent with the proper operation of its road to provide for the safety and security of plaintiff while transporting him, and that such care must be exercised in using and maintaining its roadbed with suitable ties so that they would be reasonably safe for the passage of passenger trains; the general effect of the charge being that the road and all instrumentalities for transporting passengers must be kept reasonably safe for that purpose, and there was no intention to inform the jury that defendant was an insurer of the safety of its passenger.

7. SAME—INSTRUCTIONS—SAFE TRACK.

There was no error on the part of the court in charging the jury that it would make no difference whether derailment resulted from the spreading of the rails because the ties were so defective that they would not hold the spikes or from the breaking of the T rail, for if they found such spreading or breaking was caused by the decayed and unsound state of the ties, where the declaration charged that the rails spread and broke and that by reason thereof the train went off the track, and where the plaintiff relied solely upon the unsound condition

of the railroad ties and the charge of the court limited
the jury to that specific issue.

8. SAME—NEW TRIAL—VERDICT—MOTIONS.

*Held*, also, that the verdict was not against the weight of
the evidence and that the damages were not so excessive
as to require the court to grant a new trial.

Error to Lenawee; Chester, J. Submitted January
20, 1914. (Docket No. 170.) Decided March 18,
1915.

Case by Lewis J. Marshall against the Wabash
Railroad Company for personal injuries. Judgment
for plaintiff. Defendant brings error. Affirmed.

*Baldwin & Alexander,* for appellant.

*Frank M. Sala* and *J. N. Sampson,* for appellee.

McALVAY, J. This is the third time this case has
been before this court. It was first brought here by
defendant in 1910, when it was reversed and a new
trial ordered. *Marshall* v. *Railroad Co.,* 163 Mich. 88
(127 N. W. 788). It was again before this court in
1912, with a like result. *Marshall* v. *Railroad Co.,*
171 Mich. 180 (137 N. W. 89). The third trial has
also resulted in a verdict for plaintiff. Defendant
brings the case to this court by writ of error, asking
for reversal of the judgment upon errors assigned,
which will be considered later.

The accident occurred February 2, 1908, upon the
railroad of defendant company about 10 miles out of .
the city of Adrian on the line to Detroit. Plaintiff
had taken the train for Detroit that evening, and was
riding in a chair car. At the place where the accident
occurred the train left the track, the coach in which
he was a passenger was overturned, and he was thrown
to the opposite side of the car, striking into the tran-
som in the roof of the coach and across the parcel rack,

where he was cut about the head and severely bruised and injured in his back and spine, which resulted in paralysis of his lower limbs, injuring him permanently. The negligence charged against defendant is that it allowed the ties that were used in its roadbed at the place of this accident upon which the steel rails were spiked to become decayed and unsound to the extent that they rendered the road not reasonably safe for the purpose for which it was used, and that by reason of such decayed and unsound condition the ties gave out and broke up, causing the train to become derailed. Also that defendant ran this train at an unreasonable rate of speed over such track.

In considering the case the court will follow the order which defendant has adopted in its brief, as follows:

"The errors discussed and relied upon to reverse the judgment may be grouped under the following heads:

"(1) The error of the court in receiving certain evidence introduced by plaintiff.

"(2) The error of the court in refusing to direct a verdict for defendant.

"(3) The refusal of the court to give certain of defendant's requests to charge.

"(4) Errors in the charge of the court as given.

"(5) Error in the refusal of the court to grant defendant a new trial and the findings thereon."

The first group includes only assignments of error relating to the admission of evidence. The first of these exceptions was taken while plaintiff was testifying.

It had appeared from the testimony of the man who was riding with plaintiff at the time of the accident that immediately after it occurred he found himself down with a man on top of him, who was unconscious, and at once discovered that this man was the plaintiff. He discovered that plaintiff was bleeding badly, ex-

tricated himself from under him, got some stimulant from his grip, and came back to him, when he began to revive. Plaintiff opened his eyes, and witness gave him some liquor and offered to bind up his head. He refused to allow this, and immediately went to the aid of injured people who were screaming, and administered to their necessities. Witness saw him an hour later, giving a hypodermic injection to a lady. He saw him again that night and, with others, helped wash the blood from him and put towels around his head.

Plaintiff was called next to testify and after he had related the circumstances of the accident, had stated that he became unconscious, and proceeded to relate how he was taken to Detroit to Harper Hospital and the length of his confinement and described the extent of his injuries, his counsel asked the following question:

"*Q.* What was the cause of this loss of use of your limbs, Doctor?

"*A.* It was due to a concussion of the spine.

"*Counsel for Defendant:* We object to that. He says he can't tell what he struck or how he struck, and that he was unconscious, and we move to strike it out."

This motion was denied, and an exception was taken.

Plaintiff was a practicing physician of 14 years' standing, and had testified in detail as to his condition and injuries arising from this accident. The objection is based entirely upon the fact that the witness could not tell what he struck or how he struck, and was unconscious. We have stated enough of the testimony to show that this period of unconsciousness was very short, and that his answer to the question did not depend upon "how he struck or what he struck," but upon conditions resulting from the injuries received in that train wreck concerning which the record shows he was well qualified to testify. Under the

objection made the court properly refused to strike out this testimony.

The next exception is taken to the admission of testimony of a certain witness who had worked for defendant in December and January preceding the wreck upon the section which covered the place where it occurred. He was not there at the time of the wreck, but was over the track and knew by the looks of the ties where it occurred. He testified:

"I don't know just where the wreck commenced and where it left off. I know the entire space there and some of the ties were pretty badly rotted. Some rail lengths there—I should think a third of them and some of them half of them—were badly rotten."

On cross-examination he testified that he was not able to tell from the ties the exact location of the wreck, where it occurred. He was not there at the wreck and only knew where it occurred from the condition of the ties, and refused to swear positively as to the exact location of the wreck. A motion was made on the part of defendant to strike out all of his testimony on direct examination with reference to rotten ties where the wreck took place. To the denial of this motion an exception was taken. Witness had worked on this section before and after the wreck, and had observed the condition of the ties and testified specifically in relation thereto. From the condition of the roadbed he testified he knew where the train had been off from the track. Because he said on cross-examination that he was not able to swear at the time of the last trial that there was a single decayed tie in the place where the wreck occurred it is alleged that the court should have stricken out his entire testimony relative to the condition of the ties. From our reading of the testimony we are satisfied that it related to the place of the accident and to the time when it occurred, and that the court properly refused to strike

it out. It was a question for the jury to determine the weight which should be given it.

The four assignments of error which follow are upon the question of the testimony of lay witnesses as to expressions, acts, and manifestations of plaintiff after the accident which did not occur in the presence of these witnesses, in anticipation that they would be called as witnesses in the case. There can be no doubt entertained, after reading the testimony of these witnesses, that it comes within the rule which has been stated so often by this court that the testimony of lay witnesses under such circumstances is admissible. At the close of the introduction of evidence in the case a motion was made by defendant for a directed verdict for the following reason:

"Because plaintiff's evidence does not *prima facie* prove the allegations of the declaration with respect to defendant's negligence."

As already stated, these allegations of negligence are that defendant "negligently and carelessly failed and neglected to construct and maintain said track with sound ties thereunder," and negligently "permitted the ties and track to be and remain in an unsafe and dangerous condition for the passage of trains," by reason of which this wreck occurred, and also that defendant ran said train "over said tracks so out of repair at an unreasonable and reckless rate of speed." From an examination of the evidence introduced on the part of plaintiff bearing upon the question of defendant's negligence, we are satisfied that there was evidence in the case, from the plaintiff's witnesses, of the condition of the track at the place of the wreck and as to the decayed and rotten ties and the looseness of the rails by reason of the spikes not holding, and also as to the unsafe rate of speed at which the train was running at the time, which re-

quired its submission to the jury. We are satisfied that the court was justified in denying this motion.

The next group of errors assigned relate to the refusal of the court to give certain of defendant's requests to charge.

The first of these was in effect a repetition of the motion to direct a verdict, and asked the court to charge that under the testimony in the case the defendant road, at the time of the accident, was in a proper, safe, and suitable condition for the operation of this train. Our disposition of the motion to direct a verdict contrary to the contention of defendant makes it unnecessary to discuss this proposition.

Errors assigned upon the charge of the court as given:

Error is assigned upon the following portion of the charge of the court:

"In this case you are instructed that it was the duty of the defendant to exercise that high degree of care and caution consistent with the practical operation of its road to provide for the safety and security of plaintiff while transporting him from Adrian to Detroit, which the most prudent, careful, and cautious person engaged in the same business exercises under the same or similar circumstances, in using and maintaining its roadbed with ties that were suitable and proper as to soundness, so that they would be reasonably safe and fit for passenger trains to pass over them in reasonable safety. The failure to perform that duty would constitute negligence on the part of defendant."

The contention of defendant is that this charge "would be holding the company to the highest degree of care known to the law, and would practically make it an insurer." The relations of the parties to this litigation were those of carrier and passenger, and not those of employer and employee. The rule of duty as to the degree of care to be exercised in both cases is not the same.

Before analyzing and discussing this part of the charge excepted to it will be well to ascertain the law as laid down on the subject of the degree of care required of carriers for the safety of their passengers.

In Ruling Case Law, a late publication, we find the general rule upon this subject stated as follows:

"What degree of care a carrier must observe for the safety of a passenger, to exonerate it from liability for injury, is a question of law, and the generally accepted rule on this point is to the effect that carriers of passengers are bound to exercise the highest degree of care, vigilance and precaution." 4 R. C. L. p. 1144, and authorities cited.

These authorities cover almost four pages in double column, which include cases cited from the Federal Supreme Court and the courts of last resort of a large number of the States, including many courts which are considered of the highest authority.

The text of the authority cited further declares:

"The rule as to the degree of care required of carriers of passengers has been variously stated, some courts employing the word 'utmost,' others 'greatest,' and still others 'extraordinary.' The difference in the statements, however, is merely a choice of words, and does not denote conflicting views. The reason for imposing such a high degree of care on carriers of passengers is that the safety and lives of their passengers rest entirely in their hands, the passengers having no control over the dangerous instrumentalities employed in their transportation, and public policy requires that a high degree of care be exacted." 4 R. C. L. pp. 1146, 1148.

This court has frequently laid down the rule that the charge of a trial court to the jury in a given case should be considered as a whole, and that the portion objected to should be read and considered in connection with all other portions of the charge given bearing upon the same subject.

Before proceeding to determine whether the appli-

cation of this rule in the instant case will be helpful, let us consider the specific statements contained in this paragraph above quoted to which defendant excepts. A careful examination of it convinces us that the word "most" used by the trial court in the following connection:

"* * * It was the duty of the defendant to exercise that high degree of care and caution * * * which the *most* prudent, careful, and cautious person engaged in the same business exercises under the same or similar circumstances"

—is the offending element. This must be so because later in the charge we find a like statement, in substance, with the word "most" omitted, accepted by defendant without question.

Further examining that portion of the charge objected to, we find that the whole paragraph, before reaching the objectionable clause, was modified by specifying the character of the high degree of care and caution referred to, by inserting the words "consistent with the proper operation of its road to provide for the safety and security of plaintiff while transporting him," and a later modification was made by specifying in what direction and for what purpose this care and caution of a most prudent, etc., person was to be exercised, by inserting the clause, "in using and maintaining its roadbed with ties that were suitable and proper as to soundness so that they would be reasonably safe and fit for passenger trains to pass over them in reasonable safety." It will be observed that the rule here laid down by the court was that the road and all instrumentalities for transporting passengers should be kept reasonably safe and fit for that purpose. In no portion of the charge relating to the degree of care required of the defendant railroad in this respect do we find that any other or different rule is given.

It seems very clear that there was no intention on

the part of the learned trial judge to instruct the jury
that defendant was an insurer, as appears from the
next paragraph following the one which is criticised,
in which the subject of defendant's duty is again men-
tioned, as follows:

"You are further instructed that this defendant
was not an insurer of the absolute safety of plaintiff
as a passenger upon its train, but that it was only the
duty of defendant company, when carrying plaintiff
as one of its passengers on the train in question, to
use and exercise through its officers  *  *  *  that
degree and measure of care, prudence, and caution in
constructing, repairing, and maintaining its road, ties,
*  *  *  and the running of its trains thereon, which
a prudent, careful, and cautious person engaged in
the same kind of business would have exercised under
the same or similar circumstances and conditions."

The foregoing paragraph is the same above referred
to as containing the substance of the one objected to,
with the exception of the word "most." This court
has criticised and held erroneous a charge that rail-
road companies were—

"legally bound to exert the utmost care and skill in
conveying their passengers and are responsible for the
slightest negligence or want of skillfulness either in
themselves or their servants; that the law is that com-
mon carriers of passengers are bound to the utmost
care and skill in the performance of their duty."
*Michigan, etc., R. Co.* v. *Coleman,* 28 Mich., at pp. 448-
449.

The language in the instant case is very different
from the extreme language above quoted from the
*Coleman Case, supra,* and in all the other cases cited
and relied upon by defendant, and will not bear the
construction contended for, and in our opinion could
not have had the effect of misleading the jury. Of the
charge above quoted the learned court said in that
case:

"The language used would fairly permit the jury

to find anything to be negligence which could by any possibility be avoided."

Yet, later, in speaking of the degree of care required to be exercised by carriers for the safety of passengers, the court said:

"As compared with the care needed in business involving no possible. human risk, the care to be used may be properly enough called extraordinary."

This designation of the degree of care required is within the terms used by the authority before cited, where it is stated that some courts in stating this rule employ the word "utmost," others, "greatest," and still others, "extraordinary" care.

"The difference in the statements, however, is merely a choice of words, and does not denote conflicting views." 4 R. C. L. p. 1147, *supra*.

The case of *Michigan, etc., R. Co.* v. *Coleman, supra,* was written more than 40 years ago, when railroads in Michigan and the United States were in their infancy and when the present complexity of speed, appliances, and instrumentalities used in railroading were undreamed of, and yet this court as then composed laid down the law that the degree of care which the carrier must observe for the safety of a passenger, to exonerate it from liability for injury, was "extraordinary." Courts of today of equally high character are now declaring that carriers of passengers are bound to exercise the highest degree of care. There is no good reason why this court should not also so declare. Such holding does not relieve a plaintiff from proving negligence, nor does it make the carrier of passengers an insurer, but, considering the nature of the business, the agencies and instrumentalities used, and the high rate of speed attained, the law requires of the carrier the exercise of the highest degree of care and skill. This is an interpretation of the word "extraordinary," adapted to modern exigencies.

In the instant case the neglect charged was in failing to furnish a reasonably safe and fit roadbed, by reason of unsound and defective ties, and in maintaining a too high rate of speed over such road, which contention has been determined by the jury in favor of plaintiff, thereby finding defendant was negligent in that respect, for which it should be held liable for injuries sustained. The charge in the instant case as given by the court which is excepted to did not declare that defendant carrier was an insurer. It amounted to no more than declaring that it was the duty of defendant to exercise the greatest care and caution, consistent with the practical operating of its road, in maintaining its roadbed with ties that were suitable and proper as to soundness, so it would be reasonably safe and fit for the transportation of plaintiff over it. This portion of the charge as given was not erroneous.

The following portion of the charge as given by the court is also objected to:

"And it would make no difference whether the derailment resulted from the spreading of the rails because the ties were so rotten that they would not hold the spikes, or the breaking of a T rail, if you find such spreading of the rails or breaking of the T rail was caused by the decayed and unsound condition of the ties, which rendered the track and roadbed not reasonably safe."

The contention is that this charge was erroneous because it was not supported by the declaration in the case, and that under the charge the jury was given the right to find that if the defendant was negligent under any circumstances, a verdict could be found against it, and that the jury was left to guess what caused the accident. The allegation in the declaration, after stating the unsafe and dangerous condition of the railroad ties permitted by the defendant, states:

"And while said train Number Four was passing

over it the rails spread and broke and by reason thereof the said train was derailed."

The record upon this trial, as well as upon the first and second trials, shows that as far as the defective condition of the road was concerned plaintiff relied solely upon the decayed and unsound condition of the railroad ties, and the charge of the court to the jury was that in any event they must find that the decayed and unsound condition of the ties caused this wreck. It is clear that there was but one proximate cause which it was claimed brought about this disaster, and that was the decayed and unsound condition of the ties, and the jury was not left to guess or conjecture such cause. This charge of the court is not subject to the criticism of the defendant, and was not erroneous.

The next error is upon the refusal of the court to grant a new trial. So much of the contention of defendant under this subdivision as was passed upon in what we have said relative to the refusal to direct a verdict in favor of defendant does not require further discussion. We have already said that there was evidence in the case which required that it be submitted to the jury.

It is next claimed that the verdict was not based upon the evidence and was against the weight of the evidence. From an examination of all of the evidence in the case our conclusion is that there was evidence in the case to support the verdict of the jury, and that it was not excessive.

No error appearing in this case, the judgment of the circuit court is affirmed.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, MOORE, and STEERE, JJ., concurred. BIRD, J., did not sit.