MARSHALL *v.* WABASH RAILWAY CO.

1. RAILROADS—PERSONAL INJURIES—JUDGMENTS—LIENS.

Although section 2, Act No. 110, Pub. Acts 1899 (section 8340, 2 Comp. Laws 1915), provides that a judgment for personal injuries against a railroad company shall constitute a lien upon the property of such company "over any and all other judgments, executions, or attachments," there is no authority for the claim that such judgment takes priority over a mortgage executed before the injury was received.

2. SAME—LIENS—STATUTES—CONSTRUCTION—PRESUMPTIONS.

Since said act expressly mentions certain liens made subordinate, it by implication excludes others not mentioned, upon the presumption that, having designated some, the legislature designated all it was intended the act should include.

3. SAME — COURTS — FEDERAL COURTS—JURISDICTION—RECEIVERS— MORTGAGES—FORECLOSURE.

Under said statute, a judgment for personal injuries obtained in a State court would constitute a lien on the property of the railroad company against which it was obtained, subject to any prior mortgage, although pending the action the Federal court of another State took jurisdiction in foreclosure proceedings and appointed receivers, presumably to conserve the mortgaged property of the company, there being nothing to indicate that the foreclosure suit was for the purpose of making equitable distribution of its assets among its creditors, or that the possession of the receivers was disturbed.

4. EQUITY—JURISDICTION—ACCOUNTING—COLLECTING JUDGMENT.

A prayer for an accounting cannot confer equity jurisdiction when the bill shows its only purpose is to collect an unsatisfied judgment, the amount of which is not open to question.

5. SAME—LIENS, ENFORCEMENT OF.

While the equity court, having acquired jurisdiction for other purposes, may, as an incident to general relief granted, order property sold to satisfy a lien, it has no

jurisdiction to enforce a lien upon a bill filed solely for that purpose.

Appeal from Lenawee; Hart, J. Submitted January 30, 1918. (Docket No. 47.) Decided March 28, 1918. Rehearing denied June 20, 1918.

Bill by Lewis J. Marshall against the Wabash Railway Company and another to enforce a lien for the amount of a judgment. From an order granting a motion to dismiss, plaintiff appeals. Affirmed, without prejudice.

*J. N. Sampson* and *Frank M. Sala,* for plaintiff.

*Baldwin, Alexander & Russell,* for defendants.

STEERE, J. Plaintiff's bill of complaint is filed to have a judgment obtained by him against the Wabash Railroad Company for personal injuries declared a preferred lien upon the property of defendants and that they be directed to pay the same, in default of which sufficient of their property found within the State be ordered sold to satisfy said judgment. His claim of right to such relief is based upon the provisions of section 2 of Act No. 110, Pub. Acts 1899 (section 8340, 2 Comp. Laws 1915), which provides, so far as material here, as follows:

"All claims arising out of the death or personal injury of any person, when such death or personal injury shall result from the negligence of any * * * steam railroad company, organized and doing business under the laws of this State, shall, after judgment is obtained therefor, against any such corporation, constitute a lien upon all of the assets of said corporation, and all of the property thereof, and all of its rights and franchises, and over any and all other judgments, executions or attachments levied upon said property, except such as may be issued in favor of persons having obtained judgment for personal work," etc.

Against this bill defendants filed a motion in the nature of a demurrer asking that the same be dismissed on various grounds, the substance of those calling for most serious consideration being that the statute relied upon and referred to in the bill of complaint does not, under the facts stated therein, give plaintiff's claimed lien priority over a previous mortgage, neither does it operate against or apply to foreclosure proceedings pending in the Federal court when all the property, rights and franchises of the defendant railroad company were in possession and under control of receivers appointed by that court at the time plaintiff's judgment was rendered.

The history of this litigation between plaintiff and the Wabash Railroad Company up to the time of securing the judgment to enforce which this bill is filed will be found in *Marshall* v. *Railroad Co.*, 163 Mich. 88, 171 Mich. 180, and 184 Mich. 593. Briefly summarized from the bill sufficient for the questions involved, it appears that on February 2, 1908, plaintiff sustained serious injuries while a passenger on a train of the Wabash Railroad Company in an accident which resulted from its negligence at a point on its line in Lenawee county, Michigan, and to recover compensatory damages for such tort he commenced an action in the circuit court for that county on September 15, 1908. The case was tried three times, resulting on each trial in a verdict and judgment in his favor, successively removed by the defendant to this court for review. The first two judgments were reversed and the case remanded for retrial. The third trial resulted in a verdict and judgment for plaintiff, on February 15, 1913, in the sum of $11,255.75, which was affirmed by this court on March 18, 1915. That judgment is yet in force with no part paid, no execution has been taken out to recover the same and demand of plaintiff for payment has been refused. Whether it became a

paramount lien upon the property of the Wabash Railroad Company on February 15, 1913, the date of final judgment in the circuit court, is the chief issue here.

On January 29, 1912, the Wabash Railroad Company went into the hands of receivers by order of the United States district court for the eastern district of Missouri, upon application of the Equitable Trust Company of New York, trustee, as complainant in a suit against said railroad company and James B. Forgan, defendants, to foreclose a first refunding and extension mortgage given by the Wabash Railroad Company on July 1, 1906. A decree foreclosing this mortgage and ordering sale of the property covered by it to satisfy the same was rendered by that court on January 30, 1914, and sale under said foreclosure was had on July 31, 1915, followed by confirmation of the same on August 20, 1915, about one year and a half after plaintiff's judgment was rendered in the circuit court of Lenawee county. Under said foreclosure proceedings the property of defendant Wabash Railroad Company was transferred to a company known as Wabash Railway Company, which now claims to own the property and operate the road. The bill makes special reference to the records and files in the foreclosure and receivership proceedings before the United States district court of Missouri, designated as "consolidated cause No. 3977," and asks leave to use any portion thereof deemed material on the hearing of this case, and avers that "notice of all files and papers in said cause, and all orders and decrees made in said court were filed in the district court of the United States for the southern district of Michigan, eastern division, at Detroit," which includes within its jurisdiction a portion of the line and other assets of the Wabash Railroad Company, and that no notice was ever given to plaintiff or his attorneys to appear in those proceedings and present his claim.

No copies of any of the files and records of said cause in the Federal court appear in this record, but it is stated in the opinion of the circuit judge who heard the motion, and not disputed, that the receivers in that case were discharged some time before this bill was filed and that "plaintiff had knowledge of these proceedings in the district court."

Referring to dates, upon the question of priority of lien, it is shown that the act upon which plaintiff relies was passed in 1899, the mortgage in question was given in 1906, the accident in which plaintiff was injured occurred February 2, 1908, he began his action for damages September 15, 1908, and recovered the judgment under which he claims lien on February 15, 1913. Under the act of 1899, "it is not until judgment is obtained that the statutory lien attaches." *Kaiser* v. *Railway Co.*, 169 Mich. 254.

Plaintiff contends that the fact the mortgage antedates his judgment is immaterial, because the statute antedates the mortgage and its provisions must be read into and be regarded as a part of the mortgage, citing *Southern R. Co.* v. *Bouknight*, 70 Fed. 442; *Guardian Trust & Deposit Co.* v. *Fisher*, 200 U. S. 57; *Provident Institution for Savings* v. *Jersey City*, 113 U. S. 506. These authorities and others which may be found of like import sustain the rule that a prior law imposing conditions and limitations on mortgages determines their force and effect, whatever scope is attempted by the provisions they contain. To the extent such limiting statutes are applicable they are held to enter into and become a part of such contracts to the same extent as if so provided in the instruments themselves. In the *Bouknight* and *Fisher Cases* statutes were under consideration which in express terms designated mortgages as subordinate to the liens sought to be enforced. In the *Jersey City Case* an act making water rents a charge and prior

lien upon land in a municipality to the same extent and to be collected in like manner "as other taxes assessed on real estate," which by law took priority over any mortgage or other incumbrance, was held to be constitutional and to give preference to liens for water rent over subsequent mortgages. The construction and application of the act plaintiff urges requires that the court go further and by inference read into the act itself priority of judgment liens for personal injuries over mortgages, and thus amplified read the act into mortgages given after the statute was enacted.

The provision relied on makes no mention of contract obligations, mortgages, or other securities voluntarily given by the corporation before such judgments are taken and become liens, but provides that, as against other liens established by adversary action, such judgment liens for personal injuries shall have preference "over any and all other judgments, executions or attachments levied upon said property," and from those are excepted "such as may be issued" in favor of persons having judgments for personal labor. If it was the legislative intent to subordinate previously given mortgages to liens for torts, labor or other claims against the delinquent corporation, there was no difficulty in so providing in plain words. Under the legal maxim of construction that express mention of one thing implies the exclusion of other similar things, there is reason in the contention that, the act having expressly named certain liens made subordinate, it by implication excludes others not mentioned, upon the presumption that, having designated some, the legislature designated all it was intended the act should include. In other acts both preceding and following this, the legislature of this State, in providing liens upon the property of corporations for labor in dangerous vocations, has made plain its intent to in-

clude mortgages amongst subordinated liens by expressly naming them. 3 Comp. Laws 1915, §§ 14840, 14841. The inference from a failure to mention mortgages in an intervening act of kindred import has persuasive significance.

No right of lien obtains under plaintiff's judgment except as expressly provided and to the extent prescribed by statute. It is not in recognition of the underlying principles nor enlargement of the scope of a common-law lien. It involves no claim for labor upon, material furnished for, or conservation of, the property against which a lien is asserted. The legislation providing for it goes beyond liens previously recognized at common law or in equity. Its character and extent are fixed and limited by the terms of the statute creating it, which the court may not extend or add to, although the legislature might with equal or greater merit have done so.

Although the statute relied on makes plaintiff's judgment when obtained a lien on all assets of the defendant corporation, it gives the judgment lien in express terms priority only over other "judgments, executions or attachments," and we think the learned circuit judge correctly held, when dismissing plaintiff's bill, that his judgment was not a prior lien to the previously given mortgage and it could not be maintained upon that theory.

We are impressed, however, that plaintiff's judgment is valid as it stands, and, under the statute, constitutes a lien on all the property of the defendant Wabash Railroad Company against which the action ran, subject to any valid prior mortgage upon any of such property. His action was legally begun in the circuit court of Lenawee county before the receivers were appointed or suit begun in the foreclosure case. When the Federal court of another State later took jurisdiction in the foreclosure proceedings and ap-

pointed receivers *pendente lite,* presumably to conserve the mortgaged property for the purpose of the decree of forclosure as between the parties to that suit, the State court was not deprived thereby of its right to proceed with this distinct personal action in which it had first taken jurisdiction. By permission of the court appointing them the receivers could have appeared in the case and defended had they seen fit to do so. Its progress did not interfere with their possession of the mortgaged property or with the mortgage foreclosure. They did not represent the Wabash railroad in its individual character nor supersede it in the exercise of its corporate powers, beyond their temporary custody and control of its mortgaged property. The corporation was energetically and independently, so far as shown, pursuing an active defense of plaintiff's case to the court of last resort while the foreclosure proceedings were pending. There is nothing before us to indicate that the foreclosure suit in the Federal court was for the purpose of making equitable distribution of the assets of the corporation amongst its creditors or had any object beyond the ordinary foreclosure of a mortgage and incidental conservation of the mortgaged property while the suit was in progress.

While authorities are cited by defendants sustaining extreme views as to the immunity afforded delinquent railroads from legal liability by appointment of receivers to conserve mortgaged property during foreclosure proceedings, we think there is respectable authority and better reason for the view that so long as the presumably temporary possession by the receivers of the property they are appointed to conserve is not disturbed other courts are not closed by the foreclosure suit to those desiring to pursue their legal remedies against the defaulting corporation.

" 'A receiver,' says the Supreme Court of the United

States, 'derives his authority from the act of the court appointing him, and not from the act of the parties at whose suggestion or by whose consent he is appointed; and the utmost effect of his appointment is to put the property from that time into his custody as an officer of the court, for the benefit of the party ultimately proved to be entitled, but not to change the title, or even the right of possession in the property.' *Union Bank of Chicago* v. *Kansas City Bank*, 136 U. S. 223. The ownership of the property is not changed by the appointment of a receiver. The possession of the receiver is merely that of the corporation." 5 Thompson on Corporations (2d Ed.) § 6373.

While not in all particulars analogous to the instant case, in *Pittsburgh, etc., R. Co.* v. *Trust Co.*, 172 U. S. 493, involving a contention between two lienors, the court said, referring to *Wiswall* v. *Sampson*, 14 How. (55 U. S.) 52, upon which defendants rely:

"If there had been any attempt by a suit to enforce the lien given by the Parkhurst mortgage by an actual sale of the property in question pending the proceedings in the foreclosure suits, it may be that the principle announced in that case could have been invoked, and the sale would have been ineffectual to pass title to the purchaser. But nothing was done by Lynde, after the institution of the foreclosure suits and pending proceedings therein, which was inconsistent with or tended to defeat the object of those suits."

In *Moore* v. *Timber Co.*, 83 Fed. 399, the court said:

"It has, however, been held that when a decree appointing a receiver and awarding an injunction, so far as disclosed upon its face, was to provide for the safe-keeping of the property of the corporation, and to prevent any transfers thereof, and such decree did not state that the ulterior intent of the court was to make an equitable distribution of the funds, and contained no direction to the receiver to give notice to the creditors to file their claims, the decree imposed no restrictions upon creditors in prosecuting their claims, either at law or in equity, and a judgment subsequently recovered by a creditor is as much a lien on the real

estate of the corporation debtor as if the appointment
of a receiver had never been made. (Citing authori-
ties.) I think this ruling is founded in reason, and my
opinion is that until the court has made some decree
showing that its ulterior intent is to make an equitable
distribution of the funds, and giving notice to the
creditors to file their claims, such creditors may sue
at law, and acquire a priority. Up to that time the
complainant is permitted to dismiss the case and dis-
charge the receiver."

*Vide,* also, *Blair* v. *Walker,* 26 Fed. 73; *Trust Co.
of America* v. *Railway Co.,* 183 Fed. 803.

Upon the authority of the State court to now en-
tertain jurisdiction and grant any portion of the re-
lief asked, it is to be noted the bill indicates that by
ancillary steps jurisdiction of the Federal court was
extended over the mortgaged property of the defend-
ant corporation in this State and it is said in plain-
tiff's brief that no attack is made upon the foreclosure
decree of that court, the jurisdiction of which is con-
ceded, it only being insisted that the sale under the
decree was subject to his lien, and, inferentially, that
court should have seen his rights were protected; and,
not having done so before that litigation was ended
and the receivers discharged, the State court may and
should deal with the property according to the rights
of the respective parties. In denial of the application
of this decree to him, counsel for plaintiff contend that
his judgment became a lien upon the property of the
Wabash Railroad Co. in this State before it changed
its name, if not its spots, to the Wabash Railway Co.
and by a court proceeding, only stated in outline, legal
title to its assets went with the name; and he then
had rights in the property which could not be cut off
without his day in court; but he was not in any man-
ner made a party to the foreclosure suit before final
decree, served with notice or given opportunity to
be heard.

Of his right to such notice, section 721 of the United States Statutes is cited, which provides that in the absence of Federal statutes, constitutional provisions, etc., prohibiting, "the laws of the several States * * * shall be regarded as rules of decision in trials at common law in the courts of the United States," which shall take judicial notice of them as taken by the State courts, and section 3 of said Act No. 110, Pub. Acts 1899 (2 Comp. Laws 1915, § 8341), which provides that:

"It shall be the duty of all courts of this State, in which proceedings may be pending, for the foreclosure of any mortgage, trust deed or other lien, upon any of the property of any * * * steam railroad company, doing business in this State, to cause said company, before final decree is entered in said cause, to file with said court, through the register thereof, a statement of all the claims and demands made against said company by any and all persons for * * * damages resulting from death or personal injuries, and which claim shall have arisen within six years prior to the date of filing the same with said court. And it shall be the duty of said court, upon the filing of the same, to notify any and all persons interested in said claims, or their attorneys, to be and appear before said court upon a certain day to present their said claims, and the proof thereof, * * * and to inform said court in case of claims for personal injury or death, whether it is the desire of said claimants to prosecute the same to final judgment or not."

Reports of decisions by the Federal courts show that a "rule of decision" analogous in principle to this statute has frequently been adopted when dealing with foreclosure of mortgages and enforcement of trust deeds given by railroads, as a fair and equitable measure irrespective of any statutory suggestion or requirement. While plaintiff's bill avers that the Federal court did not require a statement of claimants to be filed with it and no notice of such proceeding

201—Mich.—12.

was given to him or his attorneys, the details of the foreclosure suit are not in this record, and whether there was any substantial observance of that rule of decision, or general notice to claimants by publication or otherwise, we are not advised. The trial court stated plaintiff did have "knowledge of these proceedings in the district court." The statute makes it "the duty of all courts of this State" to pursue the course outlined, which defendants contend applies only to State courts. We are not prepared, nor required upon this record, to determine it mandatory upon Federal courts located within this State.

Plaintiff's bill shows that he has a judgment upon which execution might issue at any time, but no execution has been taken out. His bill is therefore not filed in aid of execution. His prayer for an accounting cannot confer equity jurisdiction when the bill shows its only purpose is to collect an unsatisfied judgment, the amount of which is not open to question. The palpable purpose of the bill is to have the chancery court declare and enforce collection of a statutory lien. Although there is some confusion of the law upon that subject in some jurisdictions, it has been determined in this State that while the equity court, having acquired jurisdiction for other purposes, may, as an incident to general relief granted, order property sold to satisfy a lien, it has no jurisdiction to enforce a lien, either common law or statutory, upon a bill filed solely for that purpose (*Aldine Manfg. Co.* v. *Phillips*, 118 Mich. 162), and such, we conclude, is manifestly the sole object of this bill.

The order granting defendants' motion and dismissing plaintiff's bill is therefore affirmed, with costs, but without prejudice.

MOORE, BROOKE, FELLOWS, and STONE, JJ., concurred. OSTRANDER, C. J., and BIRD, and KUHN, JJ., did not sit.